NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-574

STATE IN THE INTEREST OF J. R.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2014367
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.

AFFIRMED.

L. Antoinette Beard
825 Kaliste Saloom Road
Brandywine Bldg 3, Room 150
Lafayette, LA 70508
(337) 262-1555
COUNSEL FOR APPELLEE:
    State of Louisiana, Department of Children & Family Services

L. Lucy Melancon
Fifteenth Judicial Public Defender's Office
P.O. Box 252
Crowley, LA 70527
(337) 889-5669
COUNSEL FOR APPELLANT:
    S. R. (mother)

**PICKETT, Judge.**

S.R.[1] appeals the judgment of the trial court terminating her parental rights to her son, J.R.

## STATEMENT OF THE CASE

J.R. was born exposed to cocaine on February 12, 2014. J.R. remained in his mother's custody until July 9, 2014, when the state, through the Department of Children and Family Services (DCFS), removed the child, along with two siblings, from S.R. by Instanter Order, alleging she continued to use drugs and failed to comply with mental health assessments and substance abuse treatment. J.R. was adjudicated a child in need of care on August 19, 2014. S.R. stipulated to the adjudication. The status of S.R.'s two other children is not an issue in this appeal.

J.R. was placed in foster care. His biological father is unknown, as two potential men named by S.R. were ruled out by genetic testing. Attempts to place J.R. with relatives suggested by S.R. were not successful, either because they were not suitable placements or the relatives declined.

DCFS developed a case plan for S.R., which was approved by the trial court on December 9, 2014. The key elements of that case plan remained unchanged throughout the pendency of this litigation. S.R. was required to maintain stable and adequate housing, stay employed for six months, and provide $25 in support to DCFS each month. She was also required to have a mental health assessment and follow up with any recommendations made by the provider. S.R. was required to submit to random drug screens and participate in an approved substance abuse program. Finally, she was required to attend parenting classes and meetings, visits with J.R., court dates, or other appointments related to her child. J.R. had been placed in a foster home, where he has remained throughout the time DCFS has had custody of him. The

---

[1]The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding.

permanency goal of that case plan was "reunification with a concurrent plan of adoption."

The next case plan was approved by the trial court on June 16, 2015. DCFS recommended changing the permanency goal to "adoption with a concurrent plan of reunification" because of S.R.'s lack of suitable housing, failure to attend substance abuse treatment and parenting classes, failure to maintain employment, and failure to follow through with mental health assessments. S.R. also failed to take random drug screens. S.R. explained that she was unable to comply because she had major back problems, including a lack of feeling in her legs which required hospitalization. The trial court approved the case plan and continued custody with the state, but the permanency goal approved by the trial court was reunification. At the time of the hearing wherein case plan was approved, S.R. was hospitalized for major back surgery. The trial court set another hearing for July 21, 2015.

At the hearing on July 21, 2015, the trial court approved the case plan presented by DCFS, but this time changed the permanency goal to adoption. S.R. was unable to visit regularly with J.R. because of her hospitalization and recovery. She was living with her sister as she convalesced.

The next hearing on the status of J.R. was held on January 12, 2016. At that time, S.R. was still recovering from her back surgery. She had maintained stable housing since August. She was unable to work because of her back condition. She tested negative for drugs on two occasions, but failed to submit to a third drug screen. S.R. had attended two monthly visits with J.R., but missed two others. Those visits were difficult for S.R. because she her back surgery limited her ability to lift or retrieve J.R. She had yet to complete a substance abuse program. She also had not completed parenting classes, but was on a waiting list for an in-home program. She did complete a mental health assessment, and was diagnosed with anxiety and depression. The agency suggested that the permanency goal should be "adoption with

2

a concurrent plan of reunification." The trial court approved the case plan, but maintained the permanency goal of adoption.

On February 22, 2016, DCFS filed a petition to terminate the parental rights of S.R. and the unknown father. A trial on the petition was held on May 18, 2016. After hearing evidence, the trial court found that DCFS proved the grounds of termination pursuant to La.Ch.Code art. 1015(4) and 1015(5), and that termination was in the best interests of J.R. The trial court also terminated the parental rights of the unknown father. S.R. now appeals that judgment.

## ASSIGNMENTS OF ERROR

On appeal, S.R. asserts four assignments of error:

1. The juvenile court erred in terminating S.R.'s parental rights because the state failed to prove the grounds of La.Ch.Code art. 1015(5) by clear and convincing evidence.
    a. The state failed to meet its burden in proving that S.R. failed to substantially comply with her case plan.
    b. The state failed to prove by clear and convincing evidence that there was no reasonable expectation of significant improvement in the parent's condition or conduct in the near future.

2. The juvenile court erred in terminating S.R.'s parental rights under La.Ch.Code art. 1015(5) because the state failed to prove affirmative efforts to reunite the family by providing rehabilitative services prior to seeking termination of rights.

3. The juvenile court erred in terminating S.R.'s parental rights under La.Ch.Code art. 1015(4) because the state failed to prove that S.R. intended to permanently avoid parental responsibilities.

4. The juvenile court erred in finding that termination was in the best interest of J.R. under La.Ch.Code art. 1037.

## DISCUSSION

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the

3

most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.

. . . .

In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

The trial court found that DCFS proved by clear and convincing evidence the grounds for termination of both La.Ch.Code art. 1015(4) and 1015(5). Louisiana Children's Code article 1015 states, in pertinent part:

The grounds for termination of parental rights are:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a

4

case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code article 1036(C) states:

Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

To meet its burden of proving a lack of reasonable expectation of significant improvement, La.Ch.Code art. 1036(D) requires the state to show:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

. . . .

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

5

In her first assignment of error, S.R. argues the trial court erred in finding DCFS proved, by clear and convincing evidence, the grounds for termination pursuant to La.Ch.Code 1015(5). Specifically, she argues that DCFS did not prove that S.R. did not substantially comply with her case plan and that S.R. showed no reasonable expectation of improvement. As we have discussed, S.R.'s case plan since December 2014 required her to maintain stable housing, find employment, provide $25 in support to DCFS each month, have a mental health assessment and follow up with any recommendations made by the provider, submit to random drug screens and participate in an approved substance abuse program, attend parenting classes, and visit regularly with J.R.

The trial court found that S.R. had maintained housing since August 2015, and that housing was suitable. The evidence clearly shows, though, that S.R. never maintained employment while J.R. was in the custody of the state. She had two jobs that each lasted less than three weeks. S.R. argues that she was unable to maintain employment because of her back condition, but the evidence shows that she lost her job at Popeye's after only a week not because of any illness, but because of tardiness. S.R. acknowledges that she has always relied on others for financial support, even before her surgery. We find no error in the trial court's finding that S.R. failed to maintain employment, and failed to support her son.

Furthermore, DCFS has proven by clear and convincing evidence that S.R. has failed to substantially comply with the remaining elements of her case plan. S.R. had the responsibility of attending a substance abuse program. From the birth of J.R., who was born with cocaine in his system, drug use has been the main factor preventing S.R. from parenting J.R. Her excuses, such as the lack of transportation or her recovery from back surgery, are not sufficient to explain why she was unable to find a treatment program in two years. DCFS made numerous references both before and after her surgery, and S.R. found a reason not to comply every time. She also failed to

6

take random drug screens, which implies drug use. Finally, her insinuation that she tested positive for cocaine right before the termination hearing because she had to use drugs to be treated was met with incredulity by the trial court. We, likewise, find this claim unbelievable.

S.R. also failed to attend parenting classes, as required by her case plan. She began two different programs, but failed to complete either of them. She claims that DCFS failed to find a program for her that would accommodate her pain related to her surgeries. She also cites a lack of transportation as a barrier to her ability to attend these classes. The trial court found that the case worker made every effort to assist S.R., and the failure to attend parenting classes was attributable to S.R. We find no manifest error in that finding.

S.R. has attended mental health assessments, but she has consistently failed to follow up and comply with the treatment recommended by the provider. Thus, DCFS proved lack of substantial compliance with this element of the case plan.

The evidence showed that S.R. failed to attend visitation with J.R. over twenty times, attending only eight of thirty-one visits. Again, S.R. cites a lack of transportation and her back surgery as a barrier to her ability to attend visits. The trial court found that DCFS proved that S.R., not DCFS, was responsible for her noncompliance with the visiting schedule. We find no error in that finding.

S.R. argues that DCFS and the trial court impermissibly terminated S.R.'s parental rights because of her poverty, as evidenced by her lack of transportation for treatment or visitation, and her financial dependency on others. We find no merit to that claim. The evidence shows that DCFS, through her caseworker, Jerry Barilleaux, made a concerted effort to provide services to accommodate S.R. Even when presented with accommodations, such as inpatient treatment for substance abuse, S.R. failed to comply. Furthermore, her financial dependency on others is relevant to a

determination of whether she is capable of providing the resources necessary for parenting J.R.

The trial court found that S.R.'s last minute promises of compliance at the termination hearing did not show a reasonable expectation of improvement. S.R. had two years to comply with her case plan. Except for finding housing, she failed in every way to meet the requirements of that case plan. She blamed DCFS for her failures, and did not acknowledge her responsibilities. We find no error in the trial court's finding that there is no reasonable expectation of significant improvement.

In her second assignment of error, S.R. argues that DCFS failed to adequately provide services in an effort to reunite the family. As we have discussed, S.R.'s failures, and not those of DCFS, have made reunification untenable. We find no error in the trial court's finding that DCFS made sufficient efforts at providing services to reunite S.R. with her son.

The third assignment of error alleges that the trial court erred in finding termination under the grounds of La.Ch.Code art. 1015(4)(b). The evidence is clear that S.R. never provided any contributions to the child's care and support. But there was no evidence that S.R. intended to permanently avoid parental responsibility. While we find that the trial court erred in terminating parental rights based on this article, we still find that termination was proper pursuant to La.Ch.Code 1015(5).

Finally, S.R. argues that termination of parental rights is not in the best interest of J.R. The evidence shows that J.R. has lived with his foster parents since he was five months old. His visits with his mother are infrequent. He is healthy and developing normally despite being born exposed to cocaine. The foster parents have shown an interest in adopting J.R. We find no manifest error in the finding that terminating S.R.'s parental rights and making J.R. available for adoption is in the best interests of this child.

## CONCLUSION

The judgment of the trial court is affirmed.

**AFFIRMED.**